PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| GERALD JOHNSON, | ) | |
| | ) | CASE NO. 4:11CV00822 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CARLOS EGGLESTON, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** [Resolving ECF No. 35.] |

Before the Court is Defendant City of Youngstown's Motion for Partial Summary Judgment. ECF No. 35. The Court has reviewed the supporting memorandum, the responsive briefs, the governing law and the attached exhibits. For the reasons provided below, the Court grants the Motion for Partial Summary Judgment.

## I. Factual and Procedural History

On April 28, 2010, Plaintiff Gerald Johnson was arrested by members of the City of Youngstown police department "on suspicion of aggravated battery." ECF Nos. 1 at 3; 35-1 at 25; 36-2 at 25. He is currently serving a sentence at the Lorain Correctional Institute in connection with that arrest. ECF No. 35-1 at 7. While the circumstances of the arrest and incarceration are not well developed, the focus of this lawsuit narrowly concerns the physical force used against Plaintiff while he was in police custody.

In the Complaint, Plaintiff avers that, in carrying out his arrest and detention, police officers, including Defendant Carlo Eggleston, "seized, attacked, abused, and tortured" Plaintiff by means of "excessive and unreasonable force" in violation of the Fourth Amendment. ECF

(4:11CV00822)

No. 1 at 4.  Plaintiff also alleges that Defendant City of Youngstown ("the City") "failed adequately to train and/or supervise and/or discipline its officers, Officer Eggleston in particular, relative to proper police procedures governing arrests and the use of physical force, and it likewise failed to institute adequate policies and procedures relative to the same."  ECF No. 1 at 4.  Plaintiff asserts claims of "Excessive Use of Force" in violation of 42 U.S.C. § 1983 (Count 1), "Governmental Liability" (Count 2) and "Assault & Battery" (Count 3).  ECF No. 1.

      The City moved for partial summary judgment on the ground that Plaintiff can point to no facts showing that the City is liable under § 1983, thus requiring the dismissal of Count 2 of the Complaint.[1]  ECF No. 35.  In support of its motion, the City appended a memorandum of law.  ECF No. 35.  In response, Plaintiff filed an opposition brief (ECF No. 36, sealed document), to which the City filed a reply.  ECF No. 39.  After obtaining permission from the Court, Plaintiff filed a sur-reply.  ECF No. 42.  The motion is ripe for the Court's review.

## II. Legal Standard

---

[1] The Complaint does not make clear what claims are asserted against the City.  In particular, although the allegations of Count 2 clearly sound in municipal liability under § 1983, Count 2 does not mention that statute; Count 1 does.  Furthermore, Count 2 does not specify whether it encompasses any State law claims against the City.  Understandably confused, out of an abundance of caution, the City moved for summary judgment as to Counts 1 *and* 2, and, in addition to arguing that it is not liable under § 1983, the City also argued its entitlement to immunity under Ohio law "[t]o the extent [Plaintiff] is asserting any state claims against it." ECF No. 35 at 7.  In opposition, Plaintiff clarifies that *only* Count 2 asserts § 1983 liability against the City.  ECF No. 36 at 1 (sealed document) ("The first claim is for unconstitutional use of force, not at issue here.").  Plaintiff does not address, however, the City's concern about the possible State law claims, electing only to brief the § 1983 issue.  Thus, the Court takes Plaintiff's silence as a concession that there are no hidden State law claims lodged against the City in Count 1 or Count 2 of the Complaint and that the sole cause of action asserted in Count 2 is municipal liability under § 1983, a *Monell* claim.

(4:11CV00822)

The summary judgment procedure is "designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations omitted). "Summary judgment is appropriate only 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled judgment as a matter of law.'" *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (*quoting* Fed. R. Civ. P. 56(a)). "Where the moving party carries its initial burden, the nonmoving party 'may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.'" *Ellington v. City of East Cleveland,* 689 F.3d 549, 552 (6th Cir. 2012) (*quoting Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009)). "'A genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find for the non-moving party.'" *U.S. ex rel. Wall v. Circle C Construction, LLC*, 697 F.3d 345, 351 (6th Cir. 2012) (*quoting Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006)). "Reviewing the facts in the light most favorable to the nonmoving party, the court must ultimately determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Blizzard v. Marion Technical College*, 698 F.3d 275, 282 (6th Cir. 2012) (internal quotations omitted).

### III.  Discussion

Although the Complaint broadly implicates the conduct of several police officers during and after Plaintiff's arrest, Plaintiff's briefing and evidence makes clear that the act at issue is Officer Eggleston's use of a "balance manipulation" technique against Plaintiff at the sally-port

3

(4:11CV00822)

of the Mahoning County Jail subsequent to the arrest. ECF No. 35 at 1.[2] Plaintiff proffers a letter from the Internal Affairs Division ("IAD") of the Youngstown Police Department, which summarizes the incident:

> Officer Eggleston then proceeded to transport [Plaintiff] to the hospital in order to receive treatment for his injuries. Once Officer Eggleston took [Plaintiff] to the saliport where the police cruiser was parked, the officer proceeded to retrieve a pair of leg shackles from the police cruiser due to the fact that [Plaintiff] had tried to flee earlier. Officer Eggleston advised [Plaintiff] that he was going to place leg shackles on before he would be transported to the hospital. [Plaintiff] became very belligerent and refused to comply with the officer's orders. When the officer attempted to place the leg shackles on [Plaintiff], [Plaintiff] resisted by stiffing[sic] his body making it difficult to place the shackles on his legs. At this time Officer Eggleston lifted [Plaintiff] up and slammed him down on the top of the trunk of the cruiser in order [to keep] from being kicked in the face, and finally being able to place the shackles on [Plaintiff's] legs. [Plaintiff] was then transported to the hospital without any further incident. The whole incident was filmed by the saliport[sic] video cameras.

ECF No. 36-1 at 1-2 (sealed document). IAD concluded that Eggleston used "improper body displacement techniques" to place leg shackles on Plaintiff, and that Eggleston should have properly handcuffed Plaintiff while inside the county jail where other deputies were available to assist. ECF No. 36-1 at 2 (sealed document). As a result of its determination, IAD issued Eggleston a written reprimand. ECF No. 36-1 at 2 (sealed document).

Notwithstanding this letter, the City argues that it cannot be held liable under § 1983 because Plaintiff can point to no evidence demonstrating the City's failure to train, supervise or discipline its police officers respecting the use of force when carrying out arrests and detentions. ECF Nos. 35 at 6; 39 at 3-4. The City also argues that there is no evidence that it has inadequate

---

[2] Plaintiff states: "The use of force at issue here [is], in the defense's choice of words, a balance manipulation or displacement technique." ECF No. 36 at 1 (sealed document).

(4:11CV00822)

policies in regard to the proper use of force. ECF No. 35 at 6-7. Nor, contends the City, can Plaintiff prove that his alleged injuries were caused by any failure to train, supervise or discipline, or by any inadequate policies. ECF No. 35 at 6.

It is instructive to set forth the law governing municipal liability under § 1983. Section 1983 provides a cause of action to those injured by any "person" who, under color of State law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by" federal law. 42 U.S.C. § 1983. In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), the Supreme Court announced that municipalities may be held liable under § 1983 if the injury was caused by a "policy" or "custom" of the municipality. The reason for restricting municipal liability to injuries caused by City policy or custom was the Supreme Court's determination in the same opinion that Congress did not intend for § 1983 to impose *respondeant superior* liability upon municipalities for injuries inflicted solely by its employees or agents. *Id.* at 695. Therefore, "[t]hat a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably." *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 406-407, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) (emphasis in original). Rather, there must have been "deliberate conduct" on the part of the municipality. *Id.* at 404.

After *Monell*, in *City of Canton v. Harris*, 489 U.S. 378, 388-89, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989), the Supreme Court held that the existence of an inadequate police training

5

(4:11CV00822)

program may fairly be said to represent a municipal policy or custom of inadequate training, and thus actionable under § 1983, when the failure to train "evidences a 'deliberate indifference' to the rights of its inhabitants . . . ." The *Canton* Court identified two representative scenarios. First, when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. Second, when "the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers," a finding of deliberate indifference is appropriate. *Id.* at 390 n.10. In other words, "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. at 410.

Finally, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. at 404. Therefore, in summary, "[i]n order to establish a failure-to-train claim, [a plaintiff] must establish that: 1) the City's training program was inadequate for the tasks that officers must perform; 2) the inadequacy was the result of the [C]ity's deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury." *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006).

There is no evidence in the record showing the existence of an inadequate municipal police training program in regard to the use of physical force. Rather, the record shows that

6

(4:11CV00822)

Officer Eggleston received training in this area. Eggleston testified in his deposition that the police academy trained him on various methods of force, including balance displacement techniques, striking, batons and take-downs. ECF No. 36-2 at 16 (sealed document). Eggleston described balance displacement as a technique used to gain control of others by using their balance against them. ECF No. 36-2 at 17 (sealed document). Eggleston received certificates for the training he completed, and, moreover, he receives periodic updates on use-of-force training from the police department. ECF No. 36-2 at 16 and 28 (sealed document). Plaintiff does not proffer evidence suggesting that the training regimen completed by Eggleston and his fellow officers was inadequate. Nor does the record contain evidence showing that the City was deliberately indifferent about the consequences of inadequate training, or that Plaintiff's injuries were caused by a deficient training program and not some other intervening factor.

Plaintiff responds that summary judgment cannot be granted because "no one knows for sure" the particulars of Officer Eggleston's training, and there is no evidence that inadequate training *did not* cause of Plaintiff's injuries. ECF No. 36 at 11 (sealed document). Plaintiff misapprehends the summary judgment standard. The burden of the moving party "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Having done so, "[t]he moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323. Plaintiff cannot rely on the absence of evidence to survive summary judgment when

7

(4:11CV00822)

the burden rests upon him to "set forth specific facts showing that there is a genuine issue for trial." *Ellington v. City of East Cleveland*, 689 F.3d at 552 (internal quotations omitted.)

Plaintiff also argues that the City never addressed a "potential problem of emotional instability" on the part of Officer Eggleston. ECF No. 36 at 11 (sealed document). Plaintiff cites Eggleston's pre-employment psychological report which found that he "does show a high score on 'over-controlled hostility' which can include excessive inhibition and over-control of aggressive and hostile impulses." ECF No. 36-4 at 3 (sealed document). Plaintiff fails to mention, however, that the report concluded that "[a]ll the clinical scales are within the average range" and that Eggleston is "an appropriate candidate" for the position of police officer. ECF No. 36-4 at 3 (sealed document). More importantly, the report is irrelevant because it is not probative of the adequacy of the City's police training program.

Plaintiff claims that the City neither provided remedial training to Officer Eggleston after this incident nor after a complaint in 1996 involving his use of force against another individual. ECF Nos. 36 at 11; 36-3 (sealed documents). There is nothing in the record to support these claims. Plaintiff must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. at 324 (internal quotations omitted). Even if the claims were true, however, the failure to offer remedial training applicable to *one particular* officer does not create the inference that remedial training is never offered or that, in general, the relevant training City-wide is insufficient. *See City of Canton v. Harris*, 489 U.S. at 391 ("Neither will it be suffice to prove that an injury or accident could have

8

(4:11CV00822)

been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal.") Moreover, the 1996 incident was one in which Eggleston "grabb[ed] [a juvenile] by the face while in handcuffs and push[ed] his face up against the side of the police car," according to a police department review. ECF Nos. 36-2 at 32; 36-3 at 2 (sealed documents). The department found that his conduct was a result of the "failure of good behavior," not improper technique, and suspended him for thirty days. ECF Nos. 36-2 at 32; 36-3 at 1-3 (sealed documents). Nothing suggests that additional training, on balance displacement techniques or otherwise, was warranted or would have prevented Plaintiff's alleged injuries. In other words, Plaintiff fails to show that the harm was caused by the deliberate conduct of the City (through a policy or custom), rather than of the police officer, Eggleston. *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. at 406.

Finally, by failing to brief his allegations that (1) the City's *express* policy on the use of force is inadequate and (2) the City has a policy or custom of failing to discipline or supervise its officers, Plaintiff has apparently abandoned these claims. In any event, they also are not supported in the record. The City's General Order 1.3.1 provides:

> Officers shall use that degree of force which is reasonably necessary to effect an arrest, maintain custody of an offender or otherwise execute their official duties. If resistance to custody is encountered or escalates, officers need not retreat from their lawful efforts, but may apply such force as may be necessary and reasonable in causing the offender to submit . . . provided no substantial risk of death or serious physical harm to innocent persons results from such forceful efforts.

(4:11CV00822)

ECF No. 36-2 at 50 (sealed document).  This Order appears facially proper, and Plaintiff does not challenge it.  Moreover, Plaintiff does not identify or discuss any inadequate police supervisory or disciplinary programs, which claims are evaluated under the same standard as a failure-to-train claim.  *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005), *cert. denied*, 546 U.S. 814, 126 S. Ct. 338, 163 L. Ed. 2d 50 (2005); *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994), *cert. denied*, 513 U.S. 1111, 115 S. Ct. 902, 130 L. Ed. 2d 786 (1995)

### IV.  Conclusion

Based on the foregoing, the Court grants the City's Motion for Partial Summary Judgment.  Count 2, the sole count against the City of Youngstown, is hereby dismissed.

IT IS SO ORDERED.


 January 25, 2013                     /s/ Benita Y. Pearson
Date                                  Benita Y. Pearson
                                      United States District Judge